**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 09, 2022.**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCOTT ORAN NOLL & | § | CASE NO. 22-50065-MMP |
| MIRIAM NOLL, | § | |
| | § | |
| DEBTORS. | § | CHAPTER 7 |
| | § | |
| | § | |
| VERNER AARON NOLL, INDIVIDUALLY, | § | |
| AND ON BEHALF OF NOLL FAMILY | § | |
| INVESTMENTS, LLC, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | ADVERSARY NO. 22-05014-MMP |
| | § | |
| SCOTT ORAN NOLL, MIRIAM NOLL, | § | |
| LAURA CAIN & GERALD WAYNE SEEGER, | § | |
| | § | |
| DEFENDANTS. | § | |

1

**MEMORANDUM RELATED TO SUMMARY JUDGMENT ORDER ON DEFENDANTS LAURA CAIN AND GERALD WAYNE SEEGER'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 27)**

The Court heard (i) *Defendants Laura Cain and Gerald Wayne Seeger's Motion for Summary Judgmen*t ("Motion," ECF No. 27)[1], (ii) *Plaintiff's Response to Defendants Laura Cain and Gerald Wayne Seeger's Motion for Summary Judgment* ("Response," ECF No. 33) filed by Verner Aaron Noll, individually and on behalf of Noll Family Investments, LLC and (iii) *Defendants Laura Cain and Gerald Wayne Seeger's Reply in Support of Motion for Summary Judgment* (ECF No. 37). The Court then took the Motion under advisement.

The Court finds that the Motion should be granted in part and denied in part.

## JURISDICTION

The Court finds it has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1409. This matter is referred to this Court under the Standing Order of Reference in the United States District Court for the Western District of Texas, filed on October 4, 2013. Plaintiff Verner Aaron Noll, individually and on behalf of Noll Family Investments, LLC consented to the Court's authority to enter final orders. ECF No. 23. Defendants Laura Cain and Gerald Wayne Seeger have not consented to this Court's authority to enter final orders. ECF No. 25. Counsel for Defendants Scott Oran Noll and Miriam Noll confirmed their consent to this Court's entry of final orders.[2] If this Court lacks authority to enter final orders, this Order will serve as this Court's report and recommendation to the District Court.

---

[1] "ECF" denotes the electronic filing number.
[2] At the Court's hearing on *Defendants Laura Cain's and Gerald Seeger's Motion to Remand Pursuant to 28 U.S.C. § 1452* (ECF No. 6), counsel for Defendants Scott Oran Noll and Miriam Noll orally confirmed that they consented to this Court's entry of final orders or judgment.

## BACKGROUND

In early 2019, Verner Aaron Noll ("Verner"),[3] Miriam Noll ("Miriam"), and Scott Oran Noll ("Scott," and together with Miriam, the "Debtors") formed Noll Family Investments, LLC ("LLC") to invest in real estate. After the formation of the LLC, Miriam executed a deed conveying the real property located at 1150 Live Oak, Spring Branch, Texas 78132 ("Property") to the LLC. Verner alleges he had majority control of the LLC, preventing Miriam or Scott from transferring the Property without his consent. On February 8, 2021 ("Contract Signing Day"), Miriam executed a deed transferring the Property from the LLC to herself individually. The same day, Miriam entered a contract to sell the Property to Laura Cain ("Cain"). At closing on February 26, 2021 ("Closing Day"), the Debtors executed a deed transferring the Property to Cain. Eleven days after Closing Day, on March 9, 2021 ("Post-Closing Dispute Day"), a dispute arose when Verner went to the Property and learned of the purported sale of the Property from Cain and Gerald Wayne Seeger ("Seeger"), who were physically present at the Property renovating it. In response to this dispute, Deputy Marchant was dispatched to the Property. Cain later sold the Property to a third party. The proceeds of that third-party sale are the subject of agreed injunctive relief between the Plaintiffs and Defendants.

Verner, on behalf of the LLC, sued to quiet title against Cain and asserted claims for: (i) violation of § 12.002 of the Texas Civil Practice and Remedies Code against the Debtors and Cain, (ii) breach of fiduciary duty against the Debtors, and (iii) civil conspiracy against the Debtors, Cain, and Seeger. Verner individually brought claims for: (i) conversion against the Debtors, Cain, and Seeger, (ii) theft under the Texas Theft Liability Act ("TTLA") against the Debtors, Cain, and Seeger, (iii) unjust enrichment against the Debtors, Cain, and Seeger,

---

[3] Because Verner Aaron Noll, Miriam Noll, and Scott Oran Noll share the same last name, the Court will use the first names of these parties to distinguish them.

(iv) wrongful eviction against Cain, and (v) civil conspiracy against the Debtors, Cain, and Seeger. Verner and the LLC received temporary and then agreed injunctive relief related to the proceeds of the sale of the Property.

Both Cain and Seeger purport to move for summary judgment on each of Verner's and the LLC's claims asserted against them. Cain moves for summary judgment on her affirmative defense that she was a bona fide purchaser ("BFP") of the Property. Seeger moves for summary judgment asserting that "he did not purchase, own, or sell the Property" and "there is no basis for any cause of action against" him. ECF No. 27, at 2, 4. The Debtors did not move for summary judgment.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, permits a party to move for summary judgment, "identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). Rule 56 mandates that a court "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Fifth Circuit has explained that "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *James v. Sadler*,

4

909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "If the movant, however, does not bear the burden of proof, he should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense." *Id.* "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (citing *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)). If the moving party meets this initial burden, the nonmovant "must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248–49)).

In determining whether to grant a motion for summary judgment, a court will consider all the evidence and "draw all reasonable inferences in favor of the nonmoving party" but refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990)).

<u>**ANALYSIS**</u>

**I.    Cain**

Cain moves for summary judgment on her BFP affirmative defense. Cain asserts her BFP status defeats all of Verner's and the LLC's claims against her.[4] Cain does not directly move for summary judgment on Verner's and the LLC's asserted causes of action. Cain asserts that her BFP defense defeats Verner's claims for conversion, theft, unjust enrichment, wrongful eviction, and civil conspiracy and the LLC's claims for violation of § 12.002 of the Texas Civil Practice and Remedies Code and civil conspiracy.

**A.  Bona Fide Purchaser Status**

"Status as a bona fide purchaser is an affirmative defense to a title dispute." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam) (citing *Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam)). A BFP acquires property in good faith, for value, and without notice of any third-party claim or interest, whether that notice is actual or constructive. *Madison*, 39 S.W.3d at 606 (citing *Hous. Oil Co. of Tex. v. Hayden*, 135 S.W. 1149, 1152 (Tex. 1911)). The consideration required to establish status as a BFP for value is not market value, it is value that is not grossly inadequate. *Southside Partners v. Collazo Enters., LLC*, No. 11-16-00346-CV, 2018 WL 6729732, at *6 (Tex. App.—Eastland Dec. 21, 2018, no pet.) (mem. op.); *see McAnally v. Panther*, 26 S.W.2d 478, 480 (Tex. Civ. App.—Eastland 1930, no writ) (collecting cases in which consideration was inadequate to support a finding of status as a bona fide purchaser for value). "Texas law does not provide a definitive explanation for what constitutes 'good faith' sufficient to make one a bona fide purchaser." *Cohen v. Hawkins*, No. 14-07-00043-CV, 2008 WL 1723234, at *5 (Tex. App.—Houston [14th Dist.] Apr. 15, 2008, pet. denied) (mem. op.). Actual notice rests

---

[4] Because Cain has not directly challenged any element of Verner's and the LLC's claims, the Court does not decide those issues.

on personal information or knowledge. *Madison*, 39 S.W.3d at 606 (citing *Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631 (Tex. 1950)). Constructive notice is notice that the law imputes to a person not having personal information or knowledge. *Id.*

To obtain summary judgment on her status as a BFP, Cain must establish that she acquired the Property in good faith, for value, and without notice of any claim or interest by Verner or the LLC. If Cain meets her initial burden, Verner and the LLC must raise a genuine issue of material fact on at least one of the BFP elements to defeat summary judgment on such proof.

For Cain to establish that she acquired the Property for value, she must prove that the price she paid for the Property was not grossly inadequate. The parties do not dispute that Cain paid $45,000 for the Property, plus agreed to pay outstanding property taxes and costs of sale. Instead, Verner and the LLC argue that Cain did not purchase the Property for value because her offer of $45,000 plus was not based on her knowledge of the Property's value and her valuation was not, according to her testimony, tied to the actual value of the Property. As to the value prong of the BFP elements, the Court does not find this argument persuasive. Although a grossly low price paid might serve as some evidence of a purchaser's lack of good faith, Verner and the LLC presented no evidence that the $45,000 plus Cain paid for the Property did not constitute sufficient "value" to allow Cain to become a BFP, only evidence that such payment might not be tied to the actual value of the Property. The Court finds that Cain acquired the Property for value.

To establish her status as a BFP, Cain must also prove that she acquired the Property in *good faith* and *without notice* of any claim or interest by Verner or the LLC. Cain offers her September 12, 2022, affidavit ("Cain's Affidavit") as evidence of good faith and her lack of advance knowledge of Verner's and the LLC's involvement with the Property, the source of such knowledge, and the timing of when she acquired such knowledge. In Cain's Affidavit, she states

7

that on Contract Signing Day, an acquittance, Josh Walden ("Walden"), contacted her to see if she was interested in purchasing the home next door to his, the Property. Cain adds that she was familiar with the Property, as she had driven by, but that she didn't meet the Debtors until Walden introduced the parties on Contract Signing Day. In her affidavit, Cain maintains that as of Contract Signing Day (the date Miriam transferred the Property from the LLC to herself), she was unaware of the LLC's involvement in the Property, that Verner or the LLC claimed an interest in the Property, and that Verner resided or claimed to reside at the Property.

Assuming without deciding that this evidence satisfies Cain's burden of proving that she acquired the Property in good faith and without notice of Verner's and the LLC's claim or interest in the Property, the Court must then consider whether Verner and the LLC satisfied their burden as the nonmovants by challenging Cain's affirmative defense by raising a genuine issue of material fact about at least one element of that defense.

Verner and the LLC argue that Cain did not acquire the Property in good faith and without notice of Verner's and the LLC's claim or interest in the Property. To support this position, Verner, and the LLC, point to, among other things, the Property's chain of title and the timing of the Property's conveyance and the execution of the contract to sell the Property. On February 20, 2019, Miriam conveyed the Property to the LLC by warranty deed, and the warranty deed was recorded with the Comal County Clerk. On Contract Signing Day, Miriam, as a member of the LLC, conveyed the Property to herself by warranty deed, and the warranty deed was recorded with the Comal County Clerk. On the same day, Miriam, and Cain executed a contract for Miriam to sell the Property to Cain for $45,000 plus other consideration. Verner and the LLC assert that Cain had at least constructive notice (via deed records) of the LLC's competing interest in the Property because Miriam conveyed the Property from the LLC to herself on the same day she executed a

8

contract to sell the Property to Cain. Additionally, Verner and the LLC point to inconsistencies in Cain's testimony and statements that create material issues of fact.

Cain's inconsistent statements about when she had notice of Verner's interest in the Property, considered in the light most favorable to the non-movant, suggest Cain may have had notice of Verner's interest, which facts bear on Cain's notice and good faith. In Cain's Affidavit, she stated that she first met the Debtors on Contract Signing Day, when Walden introduced the parties. At Cain's deposition ("Cain's Deposition"), she stated that the first time she spoke to Miriam or Scott was on Contract Signing Day, when she met the Debtors for the first time at Buc-ee's. Phone records, however, reveal what looks like a twenty-minute conference call between Walden, Cain, and Scott on January 29, 2021.[5]

Inconsistencies between Cain's statements and telephone records on the depth and nature of her relationship with Walden, the Property's next-door neighbor, who knew all about the Property and Verner's interest in the Property, also bear on Cain's notice and good faith. At Walden's deposition ("Walden's Deposition"), he described Cain as the mother of one of his good friends and that Cain herself was "more of [an] acquaintance." When asked if he and Cain speak "frequently or infrequently", Walden responded that "[i]t depends. I mean sometimes I'll get materials from [Seeger] and I'll order them through [Cain]. I mean, I wouldn't say, you know, too much, no." Similarly, in Cain's Affidavit, she described Walden as an "acquaintance" and in Cain's Deposition she described her and Walden as "casual friends" who spoke "occasionally." Cain stated that she saw Walden socially "maybe twice a year, three times" and that Seeger sometimes hauls materials like mulch to Walden.

---

[5] The Response erroneously states the year 2022 instead of the year 2021 in several dates when discussing the phone records.

Verner and the LLC contend that phone records tell a different story and reveal conversations between Cain and Walden from January 21, 2021, to February 7, 2021, on more than 40 occasions for a total of over 200 minutes, and on Contract Signing Day, on eleven occasions for a total of nearly twenty-five minutes. Verner and the LLC further assert that during the same period, including Contract Signing Day, phone records reveal conversations between Walden and Miriam on five occasions and Walden and Scott on eight occasions for a total of over forty minutes.

In Walden's Deposition, he testified that knew the Debtors because he bought two pieces of property from them. After this purchase, Walden testified that Miriam told him that she wanted to sell the Property but "[s]he had some stuff that she needed to get ironed out between . . . the parties involved in the house[,]" which Walden understood to mean the Debtors and Verner. When asked if he knew anything more, Walden testified that he "knew the Debtors were trying to sell the Property, and that he didn't think Verner wanted to." Walden also stated that he was aware of the LLC because Miriam told him about it and that while she didn't tell him that the Debtors and Verner owned it, Walden knew that "[Verner] obviously was involved, and I met [Verner] next door."

Cain's actions and Cain's and Seeger's statements to Deputy Marchant and at the injunction hearings conflict with statements in Cain's Affidavit about her notice of Verner's interest in the Property. Cain states in her affidavit that, as of Contract Signing Day, she was not aware that Verner had an interest in the Property or that any person, including Verner, resided or claimed to reside at the Property. Whereas at an injunction hearing on April 29, 2021, Cain testified that she did not know about Verner's involvement before Post-Closing Dispute Day. At this same hearing, when asked whether she had discussed Verner's involvement with the Debtors *before* the

10

night of Post-Closing Dispute Day, Cain responded that the Debtors never mentioned Verner to her. Assertions in Cain's Affidavit are incongruent with her injunction hearing assertions and Cain's conversations and relationship with Walden, the Property's next-door neighbor, when considered in the light most favorable to the non-movant, suggest Cain had notice of Verner's interest in the Property.

On Post-Closing Dispute Day, Cain stated to Deputy Marchant that Verner was "hot tempered," known to vandalize, and that Cain and Seeger were "waiting for this, actually, to happen." Cain further stated to Deputy Marchant that she insured the Property for vandalism. At Cain's Deposition, she revealed that she insured the Property for vandalism on Closing Day, before Deputy Marchant was dispatched to the Property. These statements and Cain's purchase of vandalism insurance suggest Cain knew of Verner's and Verner's interest in Property at least by Closing Day, if not sooner, which varies from her injunction hearing testimony.

At Seeger's deposition, Seeger stated that he was surprised when Verner showed up at the Property on Post-Closing Dispute Day, he did not know of Verner's involvement until that day, and that he was unaware that the Property was even insured. Seeger previously, however, informed Deputy Marchant on Post-Closing Dispute Day, that he and Cain insured the Property for the full value in case Verner came back to the Property and that they "[k]new it was going to come to a head."

Additionally, in Cain's Affidavit, she stated that she was unaware of any LLC involved in the Property, as of Contract Signing Day, as well as Verner having an interest in the Property. At a second injunction hearing on May 12, 2021, Cain testified that she learned from Walden around the first weekend of March 2021 that the LLC was dissolved and that Verner was unaware of the LLC's dissolution. But later at Cain's Deposition, she first denied discussing Verner or the LLC

11

with Walden, then clarified that she asked Walden for a recommendation for pool work and he suggested Verner, and finally stated that she couldn't remember if she ever discussed the LLC with Walden.

Cain's statements to Deputy Marchant suggest she had notice of the Debtor's alleged fraudulent transfer of the Property from the LLC to Miriam and Verner's alleged "conning" of Miriam into putting the Property in the LLC to begin with. Cain further stated to Deputy Marchant that Miriam owned the Property before it went into the LLC and "whatever you go into an LLC, you come out with" and that an "attorney verified, whatever goes into an LLC comes out as yours . . . ." Later at Cain's Deposition, she was asked who told her that Verner conned the Debtors into putting the Property into an LLC and she responded that several people or neighbors gave her "[a] bit of information" but she could not identify anyone by name. At Cain's Deposition, she stated that nobody told her the proposition that "whatever goes into an LLC comes out as yours," and that she found it herself while looking online for an LLC she owned in 2013.

Viewing the summary judgment evidence in the light most favorable to Verner and the LLC, the Court determines that Verner and the LLC have raised a genuine dispute of material fact as to whether Cain acquired the Property in good faith and without notice. Because the deed transferring the Property from Miriam to the LLC and the deed transferring the Property from the LLC to Miriam were both recorded on or before the sale of the Property from Miriam to Cain closed, and are in the Property's chain of title, the Court finds that Cain had record notice that Miriam conveyed the Property to the LLC and then later conveyed the Property from the LLC to herself on the same day that she executed a contract to sell the Property to Cain. *See **Ford v. Exxon Mobil Chem. Co.***, 235 S.W.3d 615, 617 (Tex. 2007) (noting that generally recorded instruments in a grantee's chain of title establish an irrebuttable presumption of notice). There is a genuine

12

issue of material fact as to whether before closing on the Property, Cain had notice of potential issues with Miriam's authority to transfer the Property from the LLC back to herself. Cain's record notice of the last-minute conveyance of the Property from the LLC to Miriam on the same day as Cain executed the contract to purchase the Property, as well as her conflicting testimony at the injunctive relief hearings and statements in her affidavit, at her deposition, and to Deputy Marchant, when considered in the light most favorable to the non-movant, suggests Cain may not have operated in good faith and without notice.

Cain's conflicting testimony and statements, along with the timing of the transaction, the relatively low price paid, and the timing and volume of phone records create a genuine issue of material fact about Cain's alleged bad faith and notice of a claim or interest by Verner or the LLC. A reasonable factfinder could conclude that Cain did not take the Property in good faith and had notice of Verner's and the LLC's claim or interest in the Property. Since this evidence raises a genuine issue of material fact on these issues, Cain cannot establish her BFP status via summary judgment, and Cain is not entitled to summary judgment on her affirmative defense of BFP.

Thus, the Court finds that Cain's Motion is denied on her BFP affirmative defense. Cain's BFP affirmative defense must be determined through a trial on the merits. Because Cain moves for summary judgment on all of Verner's and the LLC's claims against her solely on her status as a BFP, the Court finds that the Motion is denied as to Verner's claims against Cain for conversion, theft, unjust enrichment, wrongful eviction, and civil conspiracy and the LLC's claims against Cain for violating § 12.002 of the Texas Civil Practice and Remedies Code and civil conspiracy.

## II. Seeger

Seeger moves for summary judgment by simply asserting that "he did not purchase, own, or sell the Property" and "there is no basis for any cause of action against" him. ECF No. 27 at 2,

13

4. At the Court's request, the Plaintiffs counsel clarified at the hearing on this Motion which causes of action the Plaintiffs assert against Seeger and those causes of action all appear to be based on Seeger's alleged actions concerning Verner's personal property and not the Property. Therefore, the Court only considers the Motion's assertions on behalf of Seeger to Verner's claims for conversion, theft, unjust enrichment, and civil conspiracy and the LLC's civil conspiracy claim.[6] As the movant, Seeger does not satisfy his burden to establish that there is no genuine issue of material fact by baldly asserting that there is no basis to support Verner's or the LLC's claims against him.

### A. Conversion

Conversion is "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights . . . ." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971) (citation omitted). The elements of a conversion claim are: (i) the plaintiff owned, possessed, or had the right to immediate possession of property; (ii) the property was personal property; (iii) the defendant wrongfully exercised dominion or control over the property; (iv) the plaintiff demanded return of the property and the defendant refused to return the property; and (v) the plaintiff suffered injury. *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App.—Dallas 2014, pet. denied) (citing *Grand Champion Film Prod., L.L.C. v. Cinemark USA, Inc.*, 257 S.W.3d 478, 485 (Tex. App.—Dallas 2008, no pet.)). The fourth element of conversion is unnecessary "when the possessor's acts manifest a clear repudiation of plaintiff's rights." *Cass v. Stephens*, 156 S.W.3d 38, 61 (Tex. App.—El Paso 2004, pet. denied) (citing *Whitaker v. Bank of El Paso*, 850 S.W.2d

---

[6] To the extent it's unclear, the Court will grant the Motion as to the LLC's claims against Seeger *as it relates to the Property* for violation of § 12.002 of the Texas Civil Practice and Remedies Code, conversion, theft under the TTLA, and unjust enrichment. Verner did not assert a wrongful eviction claim against Seeger.

14

757, 760 (Tex. App.—El Paso 1993, no writ)). Seeger presents no evidence that challenges any of the elements of this cause of action related to the personal property of Verner or the LLC.

### B.  Theft under TTLA

Under the TTLA, "[a] person who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code § 134.003(a). Theft under the TTLA includes "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03 . . . " of the Texas Penal Code ("TPC"). *Id.* § 134.002(2). Section 31.03 of the TPC states that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Pen. Code § 31.03(a). Appropriate means "to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another" or "to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01(4)(A)–(B). Appropriation is unlawful if "it is without the owner's effective consent [or] the property is stolen and the actor appropriates the property knowing it was stolen by another[.]" *Id.* § 31.03(b)(1)–(2). Seeger presents no evidence that challenges any of the elements of this cause of action related to the personal property of Verner or the LLC.

### C.  Unjust Enrichment

Under Texas law, it is unclear whether unjust enrichment is an independent cause of action or a quasi-contractual theory of recovery. *See **Perales v. Bank of Am., N.A.**,* Civil Action No. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014) (observing uncertainty in Texas law). Regardless of its characterization, unjust enrichment allows a party to recover "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." ***Heldenfels Bros., Inc. v. City of Corpus Christi***, 832 S.W.2d 39, 41 (Tex. 1992) (citing ***Pope v.***

*Garrett*, 211 S.W.2d 559, 560, 562 (1948)). Seeger presents no evidence that challenges any of the elements of this cause of action related to Verner's or the LLC's personal property.

### D.  Conspiracy

A conspiracy is a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (citing *Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex. 1964)). The elements of conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey*, 652 S.W.2d at 934 (citation omitted). Conspiracy does not exist as a separate basis for liability but requires an underlying tort. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007). One "cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968). Seeger presents no evidence that challenges any of the elements of this cause of action.

### E.  Seeger's Burden

To succeed, Seeger needs to disprove only one element of Verner's or the LLC's claims. Seeger, however, has not advanced any argument that points to and disproves a single element of any of Verner's or the LLC's claims against him. The Court cannot grant summary judgment on grounds not presented. Seeger has failed to meet his burden.

Thus, the Court denies the Motion as to Verner's claims against Seeger for conversion of personal property, TTLA theft of personal property, unjust enrichment of personal property, and conspiracy and the LLC's conspiracy claim against Seeger. If Plaintiffs have asserted such claims, the Court grants the Motion as to the LLC's claim against Seeger for violation of § 12.002 of the

Texas Civil Practice and Remedies Code and Verner's claims for conversion and theft against Seeger related to the Property.

## III.      Attorney's Fees Under the TTLA

In the Motion, Cain and Seeger request their court costs and reasonable and necessary attorney's fees under § 134.005(b) of the Texas Civil Practice and Remedies Code. ECF No. 27, at 5. Section 134.005(b) of the TTLA provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). Because the Court denies the Motion as to Verner's theft claims under the TTLA, Cain and Seeger are not prevailing parties under the TTLA and not entitled to court costs and reasonable and necessary attorney's fees Thus, the Court denies the Cain and Seeger's request for court costs and reasonable and necessary attorney's fees under § 134.005(b).

### <u>CONCLUSION</u>

Vernon and the LLC have established genuine issues of material fact regarding Cain's good faith and notice of Verner's interest in the Property, and therefore Cain has failed to establish her status as a BFP. While Cain may still assert this affirmative defense at trial, Verner, who gets the facts viewed in his favor in summary judgment practice, has raised genuine issues of material fact on this affirmative defense. Accordingly, the Motion is denied.

To the extent that the *Plaintiffs' Third Amended Original Petition* (ECF No. 16) asserts claims against Seeger related to the Property, the Motion is granted. To the extent such claims only relate to Verner's and the LLC's personal property, the Motion is denied. Movants' request for court costs and attorneys' fees is denied. The Court will enter a separate order consistent with this memorandum.

# # #
